IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| STEVEN FENNER, | : | Case No. 3:12-cv-179 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and § 1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 10), the Commissioner's Memorandum in Opposition (doc. 12), Plaintiff's Reply (doc. 13), the administrative record (doc. 6),[2] and the record as a whole.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his applications for DIB and SSI on December 18, 2008, alleging a disability onset date of July 1, 2008. PageID 149-58. Plaintiff claims he is disabled due to mental impairments concerning his memory, cognition, and ability to control his behavior.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

PageID 252. His mental impairments arise out of a traumatic brain injury he sustained in a motor vehicle accident in October 1995. *See, e.g.*, PageID 321-28, 388-484. Following initial administrative denials of his application, an administrative hearing was conducted before ALJ David Redmond on August 10, 2010. PageID 75-98. On December 21, 2010, the ALJ issued a written decision, concluding -- at Step Five of the five-step sequential disability analysis, *see infra* -- that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. PageID 52-65.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013 (Exhibit 15D);

2. The claimant has engaged in substantial gainful activity since July 1, 2008, the alleged onset date (20 CFR 404.1571, *et seq.*, and 416.971, *et seq.*);

3. The claimant has the following severe impairments: sequelae of traumatic brain injury, depressive disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant retains the [residual] functional capacity ["RFC"] to perform work at any defined level of exertion subject to the following non-exertional limitations: simple tasks featuring minimal interpersonal contacts in the workplace and no production quotas;[3]

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965);

---

[3]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 416.967. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

7. The claimant was born [in] 1974. At age 36 he is classified as a "younger individual" for Social Security purposes (20 CFR 404.1563 and 416.963);

8. The claimant has a high-school education and about one year of college credits (20 CFR 404.1564 and 416.964);

9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11. The claimant has not been disabled, as defined in the Social Security Act, from July 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 55-65 (footnote added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 42-46. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on June 12, 2012. Doc. 1.

## B.  Hearing Testimony

At the administrative hearing, Plaintiff testified before the ALJ that he has a poor memory. *See* PageID 81-82. He further testified that he has difficulty controlling his anger and behavior, explaining that he "throws a fit" when things do not go his way. PageID 84-85. Plaintiff estimated that he has had 20 to 25 jobs since his accident, but they ended because (1) he did not like the job; (2) he was unable to meet the job requirements; or (3) he would "walk out" or be "let go" as a result of his attitude or temper. PageID 86. For example, Plaintiff lost his three-year job at a turkey processing plant for allegedly throwing boxes at his co-worker. PageID 81, 86.

Plaintiff testified that he does not have any physical impairments. PageID 82, 86. Further, he testified that he can do a simple task, such as sorting nuts. PageID 87-88.

Additionally, Plaintiff's mother, Carol Bruggeman, testified on his behalf. PageID 88-94. Ms. Bruggeman testified that Plaintiff's disposition changed after his accident: he became more angry and agitated.[4] *See* PageID 90-92. Moreover, Ms. Bruggeman testified that Plaintiff is forgetful in his daily life, and sometimes repeats himself in conversations. *See* PageID 93-94.

Mark Pinti, a vocational expert ("VE"), also testified at the hearing. PageID 94-98. He testified that Plaintiff has past relevant work as a laborer, which is classified as "medium" and "unskilled." PageID 94. The VE testified that -- based on an RFC of any exertional level, but "limited to simple tasks featuring a minimal degree of personal contact in the workplace, and featuring no production quotas" -- Plaintiff could perform 25,000 medium, unskilled jobs in the regional economy, such as an industrial cleaner (3,000 jobs) or a floor waxer (600 jobs); and an additional 30,000 light, unskilled jobs, such as a cleaner (4,000 jobs) or packager (2,000 jobs). PageID 95.

## II.  APPLICABLE LAW

### A.  Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[5]; *Bowen v. Comm'r of Soc. Sec.,* 478

---

[4] The Court notes that Ms. Bruggeman's statement -- that Plaintiff has become angrier since his accident -- is contradicted by her prior statements. In a neuropsychological evaluation in April 1996, Plaintiff's mother reportedly stated that Plaintiff "had a short fuse and when angry, he sometimes hit things, threw things, and yelled," but "these personality characteristics were present since childhood and have not changed appreciably." PageID 322.

[5] The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

-4-

F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which [he or she] can act, without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

On appeal, Plaintiff claims the ALJ erred by: (1) giving insufficient weight to the opinion by neuropsychologist Bill Smith, Ph.D.; and (2) considering Plaintiff's part-time and periodic employment subsequent to his alleged disability onset date. *See* PageID 593-600.

### A. The ALJ's Decision to Not Defer to Dr. Smith's Opinion is Supported by Substantial Evidence

Dr. Smith performed a series of psychological and cognitive tests on Plaintiff in April and May, 2010. PageID 547-62. Dr. Smith concluded that "the combination of deficits sustained by [Plaintiff] renders him unemployable due to the difficulties he has with learning and remembering new tasks, resisting distraction, and being inattentive, and inability to control his emotions and behavior." PageID 561. Further, Dr. Smith opined that "[t]he emotional and behavioral dyscontrol problems [Plaintiff] currently experiences will make it difficult for [him] to interact in a predictable and appropriate manner with the public, coworkers and supervisors." *Id.*

Plaintiff claims the ALJ erred in weighing Dr. Smith's opinion because he failed to properly consider the factors under 20 C.F.R. § 404.1527(c) -- *i.e.*, Dr. Smith's specialization; the consistency of his opinion with the record; and the supportability of his opinion. *See* doc. 10 at PageID 594-98. Contrary to Plaintiff's contentions, however, the ALJ's decision demonstrates his consideration of these factors:

> When evaluating under these guidelines [*e.g.*, 20 CFR §§ 404.1527 and 416.927], the conclusion of examining neuropsychologist Dr. Smith [--] that the claimant is rendered "unemployable" [--] cannot be given controlling, or even deferential, weight. Dr. Smith is not a treating source but an examining source who saw the claimant on only two occasions.[6] His conclusion[,] that the claimant is rendered "unemployable[,]" is inconsistent with the opinions of other treating, examining, and evaluating sources who found the claimant's mental functioning limitations to be much less significant. Dr. Smith concluded his report by deferring to treating source Dr. Valle as being "in the best position to evaluate and provide treatment…" (Exhibit 22F at 16). Dr. Valle reported in April 2010 that the claimant was exhibiting "more control over his emotions" and noted that the claimant was "feeling pretty good" (Exhibit 18F at 1). In fact, Dr. Valle's report indicates that the claimant's condition was stable to the point that he would not need to see the claimant for six months (Exhibit 18F at 1). Furthermore, the fact that the claimant was actually working in competitive employment at the time of Dr. Smith's examination belies his conclusion that the claimant is rendered "unemployable." Additional support for rejection of Dr. Smith's conclusion regarding the claimant's inability to work is found in the claimant's work history. Between 2002 and 2005[,] the claimant reported that he worked for NK Parts Industries (see Exhibit 4E at 6) assembling and disassembling automobile transmissions. As the claimant described his duties, this job involved a level of concentration and mental acuity that would be inconsistent with the conclusions of Dr. Smith. Consequently, the conclusion of Dr. Smith [--] that the claimant is rendered "unemployable" [--] is rejected as being less that credible as it is inconsistent with the majority of other medical source statements[,] as well as the fact that the claimant actually continues to work.

PageID 61 (footnote and brackets added).

The Court finds the weight accorded to Dr. Smith's opinion is supported by substantial evidence. First, the ALJ reasonably found that Dr. Smith's opinion is inconsistent with other

---

[6] The ALJ appears to be referring to the fact that Dr. Smith only saw Plaintiff twice in 2010 before reporting that Plaintiff is "unemployable." The Court notes for the record that Dr. Smith previously evaluated Plaintiff after his motor vehicle accident in 1995 and 1996. *See, e.g.*, PageID 321-28, 465-67, 478-82.

medical opinions in the record.  Plaintiff's treating neuropsychologist, Michael Valle, D.O., made the following observations concerning Plaintiff in April 2010 (one month before Dr. Smith's report):  he has been doing "very well"; he "has more control over his emotions and in general he states that he is feeling pretty good"; Plaintiff is "alert, oriented, and cooperative"; Plaintiff was "the best [Dr. Valle] ha[d] ever seen him"; and "[s]ince he is doing so well, I will see him back in six months."  PageID 523.  Moreover, Dr. Smith's opinion was inconsistent with the opinions of State examining psychologist, Michael Wuebker, Ph.D., and State reviewing psychologist, Katherine Lewis, Psy.D., who both opined that Plaintiff's mental abilities were only mildly impaired.[7]  PageID 346-51, 353-66.  Additionally, the ALJ reasonably determined that Dr. Smith's statement -- that Plaintiff was unemployable -- was undermined in light of the fact that Plaintiff was employed at the time of his evaluation.  PageID 548.  Finally, the ALJ properly determined that Dr. Smith does not qualify as a treating doctor.[8]

Finally, the Court notes the ALJ did not ignore Dr. Smith's opinion, but rather, he incorporated his findings into Plaintiff's RFC:  Plaintiff was restricted to "simple tasks featuring minimal interpersonal contacts in the workplace and no production quotas."  PageID 59.  The ALJ was not required to accept Dr. Smith's conclusion that Plaintiff is "unemployable."  The question of whether or not a claimant is disabled is an issue reserved solely to the province of the Commissioner.  *See* 20 C.F.R. § 404.1527(d); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d

---

[7] "Mild" functional limitations are not suggestive of a disability.  *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011) (noting that "mild" and "moderate" functional limitations are "non-disabling").

[8] The opinion of a treating physician must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).  To qualify as a treating source, a doctor must have an ongoing treatment relationship with the claimant, seeing him or her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation that is typical for the treated condition(s).'" *Blakley*, 581 F.3d at 407 (brackets omitted). Plaintiff does not challenge the ALJ's finding -- that Dr. Smith was not his treating doctor.  *See* doc. 10 at PageID 594-98. Though Dr. Smith evaluated Plaintiff following his car accident in 1995-96, *see* PageID 321-28, 465-67, 478-82, he did not see him again until 2010, upon the referral of Plaintiff's attorney to assess employability.  PageID 547.

387, 390 (6th Cir. 2004). It is the Commissioner's function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987), and that is what the ALJ reasonably did here. Accordingly, the Court finds the ALJ's conclusion -- that Dr. Smith's opinion is not entitled to deferential weight -- supported by substantial evidence.

### B. The ALJ Did Not Err in Considering Plaintiff's Employment History Subsequent to His Alleged Disability Onset Date

Plaintiff next argues that the ALJ erred in "penalizing Plaintiff for attempting to work." Doc. 10 at PageID 598-600. The ALJ stated as follows with respect to Plaintiff's substantial gainful activity:

> Despite the alleged disability onset date of July 1, 2008, there is evidence that the claimant continued to work as a laborer at an egg processing plant, at a turkey processing plant, and in a manufacturing capacity until at least the end of October 2008 (see Exhibits 1E, 3E, and 4E). [*See* PageID 253, 260.] This work appears to have been done at a level consistent with "substantial gainful activity" as that term is defined for Social Security purposes (20 CFR 404.1571, *et seq.*, and 416.971, *et seq.*).
> As he testified, [Plaintiff] continues to work periodically when work is available (see Exhibit 18D) [*See* PageID 215-27.] Earnings in 2010 do not appear to reach a level indicative of "substantial gainful activity." Nonetheless, [Plaintiff's] continued ability to work, even on a periodic or part-time basis, supports a conclusion that he is not rendered "disabled" within the meaning of the Social Security Act.

PageID 55 (brackets added).

Plaintiff does not dispute that he continued to work after the alleged onset date in 2008, as well as periodically throughout 2010. *See* doc. 10 at PageID 598-600. Instead, Plaintiff argues that his failed attempts to retain employment should not be counted against him. *See id.* Plaintiff's argument is unpersuasive. "Any work done during a period of claimed disability may show that a claimant can engage in substantial gainful activity." *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) (citing 20 C.F.R. §§ 404.1571, 404.1520); *see also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1029 (6th Cir. 1990); *Ashworth v. Sullivan*, No. 91-5699, 1991

U.S. App. LEXIS 30672, at *18-19 (6th Cir. Dec. 30, 1991) (noting the ALJ properly considered the claimant's part-time work, even though it did not qualify as "substantial gainful activity").

Further, the case upon which Plaintiff relies in support of this argument, *Wilcox v. Sullivan*, 917 F.2d 272 (6th Cir. 1990), is inapplicable. In *Wilcox*, the Sixth Circuit found that the ALJ erred in considering the fact that the claimant, who suffered from multiple sclerosis, had worked during periods of remission. *Id.* at 277. *Wilcox*, however, specifically concerned claimants "having episodic illnesses that normally include periods of remission, such as multiple sclerosis." *Shaw v. Sec'y of Health & Human Servs.*, No. 91-2365, 1992 U.S. App. LEXIS 28984, at *4 (6th Cir. Oct. 29, 1992) (interpreting *Wilcox* as having a limited application). If the claimant's condition is "not episodic," there is no error in considering the claimant's work history. *See id.* (finding the ALJ properly took into account the claimant's return to work following a surgery, when the claimant's condition was not episodic).

Plaintiff's mental impairments are not episodic. To the contrary, Plaintiff alleges that he has continuously suffered from them since his car accident in 1995. Accordingly, the Court is not persuaded by Plaintiff's citation to *Wilcox*, and finds that the ALJ properly considered Plaintiff's employment history after his alleged disability onset date.

Finally, to the extent Plaintiff makes a general assertion that the ALJ's non-disability finding is unsupported by substantial evidence, that argument has no merit. Substantial medical evidence, as well as Plaintiff's work history, supports the ALJ's finding that Plaintiff's mental impairments are not disabling. *See supra.* It is not the Court's role to sift through the record and make a *de novo* determination of whether or not a claimant is disabled. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Where, as here, there is substantial evidence supporting the ALJ's resolution of the disputed medical evidence, the Court must

affirm the ALJ even if the Court might have resolved such evidence in Plaintiff's favor had it been the trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987).

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's assignments of error are not well-taken.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

May 22, 2013                                         **s/Michael J. Newman**
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).